KUTTROFF, PICKHARDT & CO. *v.* UNITED STATES (No. 2347).[1]

1. CONSTITUTIONAL LAW.

The wisdom of laws, their economic soundness, and their effect on the people does not determine their constitutionality. A law may be unwise, economically unsound, and even detrimental to the people and still be constitutional. Whether a law is constitutional or unconstitutional is determined solely by the power which Congress is either expressly or by necessary implication authorized to exercise by the organic law of the land. The propriety of the exercise of that power is a political, not a judicial, question.

2. CONSTITUTIONAL LAW—PARAGRAPH 28 AND SUBDIVISION (f) OF SECTION 402, TARIFF ACT OF 1922—ARTICLE I, SECTION 8, CLAUSE 1, CONSTITUTION OF THE UNITED STATES.

Paragraph 28, tariff act of 1922, levies duty upon coal-tar products, and bases it upon the American selling price (as defined in subdivision (f) of section 402) of any similar competitive domestic article. Subdivision (f) of section 402 defines the American selling price as the ordinary wholesale price current in the domestic market. Article I, section 8, clause 1 of the Constitution of the United States empowers Congress to levy duties for revenue, and enjoins that they shall be uniform. Paragraph 28 does not contravene Article I by delegating the taxing power to the American manufacturer, since it is the *market* and not the *manufacturer*, that fixes the dutiable value. The paragraph does not contravene the article by levying ununiform taxes, since the *rate* is the same for every State in the Union no matter what the American

---

[1] T. D. 40313.

selling price may be found to be. The paragraph does not contravene the article by imposing a duty without revenue purpose, and evinces no design or tendency to create a monopoly in domestic manufacturers of coal-tar dyes.

3. APPELLATE APPRAISEMENT, JUDICIAL.
    On appeal from a local to a general appraiser under section 501, tariff act of 1922, the determination is judicial, not administrative.

4. EVIDENCE, BURDEN OF PROOF, PREDICATE, ADMISSIBILITY.
    Upon an appellant from a local to a general appraiser under section 501, tariff act of 1922, rests the onus of establishing the value of the merchandise. Paragraph 28 taxes coal-tar products on the American selling price of similar domestic competitive products; or, if there is no similar domestic competitive product, on the United States value of such or similar importations. An appellant from a local to a general appraiser, claiming dutiability on the United States value as against the American selling price, must first show that there is no similar domestic competitive product before any evidence of United States value becomes relevant.

5. PRESIDENTIAL PROCLAMATION OF DIFFERENCE IN COST OF PRODUCTION.
    The finding and proclamation by the President of the United States of the difference in cost of production between foreign and domestic competitive merchandise, under subdivision (b) of section 315, tariff act of 1922, as a preliminary to levying duty on the American selling price has no application to the levying of duty on the American selling price in case of competitive foreign coal-tar products under paragraph 28, since the paragraph is, by its own terms, altogether independent.

### United States Court of Customs Appeals, June 28, 1924

APPEAL from Board of United States General Appraisers, G. A. 8713 (T. D. 39911)

[Reversed with instructions for remanding ]

*Barnes, Wilson & Halstead* (*Frank M. Halstead* and *Albert MacC. Barnes, jr.*, of counsel) for appellant.
    *William W. Hoppin*, Assistant Attorney General (*John G. Lerch* and *Samuel M. Richardson*, special attorneys, of counsel) for the United States.
    *Marion De Vries* (*De Vries, Doherty, Davis & Lamb* of counsel) amicus curiae.

[Oral argument May 21, 1924, by Mr. Halstead and Mr. Lerch and May 23 by Mr. De Vries]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Fifty pounds of azoflavine, a coal-tar dye, imported at Rouses Point, N. Y., on November 1, 1922, was entered at a total United States value of $80.15, or at a unit United States value of $1.603 per pound. The goods were assessed for duty under that part of paragraph 28 of the tariff act of 1922 which reads as follows:

PAR. 28. Coal-tar products: All colors, dyes, or stains, * * * 45 per centum ad valorem based upon the American selling price (as defined in subdivision (f) of section 402, Title IV) of any similar competitive article manufactured or produced in the United States, and 7 cents per pound: *Provided*, That * * * if there is no similar competitive article manufactured or produced

in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (d) of section 402, Title IV. For the purposes of this paragraph any coal-tar product provided for in this act shall be considered similar to or competitive with any imported coal-tar product which accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner.  *  *  *

The importation was appraised by the local appraiser as follows:

Appraised at American selling price of $1.80 per pound and one and one-fourth times standard strength.

From that appraisement an appeal to reappraisement was taken by the importer, which appeal was assigned, in accordance with the provisions of administrative section 501, to a single general appraiser for the ascertainment and return of the value of the importation.

On the hearing of the appeal William P. Pickhardt testified that he was secretary and director of Kuttroff, Pickhardt & Co. (Inc.), and that he was in close touch with the various activities of the company; that he was familiar with the sale prices of azoflavine sold by Kuttroff, Pickhardt & Co. on and prior to October 31, 1922; that the company sold the importation on or about October 28, 1922, at $2.65 per pound, subject to additional duties and to any change in duty assessed on final liquidation; that that price was the price at which the company would have been willing to sell azoflavine to all purchasers in the principal markets of the United States on or about October 28, 1922; and that that was the price at which azoflavine was offered by the company to the trade in the United States between October 28, 1922, and October 31, 1922.

The Government objected to that line of testimony on the ground that it was immaterial and on the ground that it was not the selling price in the usual course of business in the United States and was not evidence of the price at which merchandise was freely offered for sale in wholesale quantities. The objection was overruled and the Government excepted.

On cross-examination the witness testified that on November 9, 1922, inquiry was made at the appraiser's office on the form prescribed as to the value of azoflavine and that the appraiser replied that there was no information.

The importer rested his case on the evidence recited and on the legal propositions, first, that that part of paragraph 28 which makes the American selling price of any similar competitive article manufactured or produced in the United States determinative of the value of coal-tar products for duty purposes is unconstitutional and void; second, that in this case the burden rested on the Government of showing the American selling price of the competitive article manufactured or produced in the United States and similar to the importation.

The General Appraiser held that the method prescribed by Congress for ascertaining the value of coal-tar products was valid and that the burden of proving the existence of a comparable domestic article and its American selling price. rested on the Government.   The Government having refused to assume that burden, the General Appraiser appraised and returned the importation at its entered value.

From the decision of the general appraiser the Government appealed to the Board of General Appraisers in conformity with the provisions of administrative section 501.   The appeal having been duly assigned to Board 3, that board, noting that the commodity was one and one-fourth times the standard strength, affirmed the local appraiser.

In support of his contention that the provision fixing the value of coal-tar products for duty purposes is unconstitutional, the importer argues, first, that the duty imposed by paragraph 28 is required to be levied not on the value of merchandise imported but on the value of similar property belonging to another;  second, that the power to fix the amount of tax payable is delegated by paragraph 28 and subdivision (f) of section 402 to domestic manufacturers of dyes and may be increased or decreased without any limitation whatever by the uncontrolled acts of such manufacturers;  third, that section 28 is not designed to raise revenue "to pay the debts and provide for the common defense and general welfare of the United States," but is designed for the purpose and has the operation and effect of granting a monopoly to certain persons or classes of persons in the manufacture of certain commodities in the United States and in the importation and sale of similar commodities imported from abroad by delegating to such persons the power to fix the "taxes" payable by themselves and others.

We can not agree that the statutory provisions for the ascertainment of the value of the importation are unconstitutional.   The States by section 8 of Article I of the Constitution, expressly granted to Congress the power to levy and collect uniform duties on all imports into the United States and to make all laws necessary for carrying that power into execution.

Paragraph 28 of the tariff act levies an ad valorem duty on all imported coal-tar products and the rate prescribed is the same for every State in the Union.   In order to determine the amount of ad valorem duty assessable on such coal-tar products that ad valorem rate must, in accordance with the terms of the paragraph, be applied to the American selling price of any similar competitive article manufactured or produced in the United States.   As defined by subdivision (f) of section 402 the American selling price of a domestic article is the price including the cost of all containers or coverings, and all other costs, charges, and expenses incident to placing the

merchandise in condition, packed ready for delivery, at which such article is freely offered for sale to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner, at the time of exportation of the imported article, would have received or was willing to receive for the domestic article when sold in the ordinary course of trade and in the usual wholesale quantities.

There is absolutely nothing in paragraph 28 or in subdivision (f) of section 402 which expressly or by necessary implication creates a monopoly or authorizes domestic manufacturers, importers, or wholesalers to fix the amount of duty to be paid by importers of coal-tar dyes or which prescribes that the value of similar competitive domestic products shall determine the *rate* of duty.

The *rate* of duty is not dependent on the value of the importation or on that of the domestic product. The ad valorem rate is applied to the American selling price of a similar competitive domestic article as the measure of value, but that application of the ad valorem rate determines the *amount* of duty, not the rate of duty.

The determination of the value of one article by ascertaining and accepting the value of a similar or comparable article is far from new to customs practice and to customs legislation. Indeed, in the appraisement of merchandise, appraising officers have for a long time been authorized to take into consideration the wholesale price at which similar or comparable merchandise was sold or offered for sale. See section 11 of the act of 1890, as reenacted by section 32 of the act of 1897; section 1 of the act of 1909; and paragraphs K and R of the act of 1913.

The American selling price and the United States value, as defined in administrative section 402, do not permit the making of artificial prices or the control by domestic interests of the duties to be assessed on foreign goods. The American selling price and United States value is not the price at which domestic products are offered to a favored few in limited quantities in a market specially created or restricted for the purpose of fixing the duties to be assessed on importations, but it is the price at which such products are freely offered for sale to all comers in the usual wholesale quantities and in the principal markets established for such goods in the ordinary course of trade. Individuals, firms, or corporations having a monopoly of some particular commodity can not establish the statutory American selling price by special factitious offerings or by sales to controlled or favored purchasers or by transfers of less than the usual wholesale quantities or by transactions in a market not recognized by the trade and not developed in the ordinary course of business.

Congress was strictly within its rights in fixing an ad valorem rate of duty on imported coal-tar products and in defining the American

selling price or United States value as the value to which that rate should be applied. Whether the power to lay duties and collect them was well or badly exercised in the enactment of paragraph 28 and section 402, is not for us to say—that is a political not a judicial question. The Lottery case (188 U. S. 327, 363).

· The wisdom of laws, their economic soundness, and their effect on the people does not determine their constitutionality. A law may be unwise, economically unsound, and even detrimental to the people, and still be constitutional. Whether a law is constitutional or unconstitutional is. determined solely by the power which Congress is either expressly or by necessary implication authorized to exercise by the organic law of the land.

Congress can not, it is true, under the guise of laying a tax or imposing a duty. which clearly has no revenue purpose, assume a legislative jurisdiction, either not granted or prohibited by the Constitution, and accomplish by indirection that which it has no authority to do directly. McCulloch v. Maryland (4 Wheat. 316, 423); Veazie Bank v. Fenno (8 Wall. 533); The Lottery case (188 U. S. 321–362, 363); Hammer v. Dagenhart (247 U. S. 251–273, 274, 275, 276); Child Labor Tax case (259 U. S. 20, pp. 37, 38, 39).

There is nothing in paragraph 28 and in section 402 which would justify even an inference that they were designed for any purpose other than that of imposing duties on imported merchandise for revenue, or that their execution just as written would result in invading the rights of the States or in setting at naught any of the constitutional guaranties. The provisions are therefore in our opinion constitutional. In re Kollock (165 U. S. 526–536); McCray v. United States (195 U. S. 27, 53, 54, 56); United States v. Doremus (249 U. S. 86–94); Child Labor Tax case (supra, 40, 41, 42).

We now come to the consideration of whether on the Government rested the burden of first proceeding and of proving that there was an article similar to or competitive with azoflavine manufactured or produced in the United States. If the Government was not bound to assume that burden and if it was the duty of the importer to prove prima facie the nonexistence of any such article, then the importer had no right to prove United States value, and failed to make out a case.

The importer demanded, as he had a right to do under the provisions of administrative section 501, a reappraisement of the merchandise. That demand raised the issue as to the value of the merchandise and vested the general appraiser with jurisdiction to try the question thereby raised and after hearing the parties and their witnesses to judicially, not administratively, determine the value of the importation for duty purposes.

The importer, and not the Government, invoked the jurisdiction of the general appraiser, and upon the former devolved the duty of first proceeding and therefore the burden of establishing at least. prima facie the value of the imported merchandise. In effect, the importer complained to the general appraiser that the administrative appraisement was wrong. Unless that complaint was wholly without merit or a chance shot in the dark, the importer must have had some information, some evidence showing or tending to show that there was no similar competitive article produced in the United States.

The importer might have made out a prima facie case by affirmatively proving that no such competitive article existed or by proving that no such article was known to those in contact with the trade. United States *v.* Wells (77 Fed. 411, 412); Klipstein *v.* United States (1 Ct. Cust. Appls. 122, 124; T. D. 31120). The importer introduced no evidence of that kind and submitted his case on testimony tending to prove the United States value of the merchandise.

The rate of duty prescribed by section 28 can be applied to the United States value of a coal-tar product only in case there is no similar or competitive article manufactured or produced in the United States. No evidence having been submitted by the importer as to the nonexistence of a similar domestic competitive article, it is apparent that testimony as to the United States value of the importation was inadmissible and that the Government's objection thereto should have been sustained by the general appraiser.

The appraisement of the local appraiser makes no disclosure of a competitive article and it may be that the Government would have been unable, if called upon, to prove that such an article existed. Nevertheless, the importer must be held to the rule that a complainant's right to relief depends primarily on the strength of his own case and not on the weakness of that of his adversary.

The appellant contends that the Board of General Appraisers had no power to find the American selling price until after a finding and proclamation by the President authorizing such action. The point is not well taken.

Subdivision (b) of section 315, applies only to merchandise which would not be normally appraised at the American selling price and not to goods which are specifically required to be so appraised. Paragraph 28 does not require a finding or proclamation by the President and clearly provides without limitation or reserve that if there be a competitive article, the rate of duty shall be applied to the American selling price as defined in subdivision (f) of administrative section 402.

In view of the fact that the general appraiser erred in ruling that the burden was on the Government to show the nonexistence of a competitive article and in admitting evidence as to the United States

value of the importation, and in view of the further fact that the appraisement of the local appraiser does not appear on its face to be an appraisement of a competitive article, we are of the opinion that the Board of General Appraisers should not have sustained the original appraisement and that the case should have been remanded to the general appraiser for further proceedings.

The judgment of the board is therefore reversed with instructions to remand the case to the general appraiser for further proceedings not inconsistent with this opinion.

*Reversed,* with instructions to remand for further proceedings.

BARBER, Judge, concurs in the result.