(Reap. Dec. 9657)

TRANS WORLD INTERNATIONAL SERVICE CO. v. UNITED STATES

Entry No. 708377.

(Decided April 11, 1960)

*Eugene R. Pickrell* (*George E. Long* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: This case has been submitted for decision upon the following stipulation entered into between counsel for the respective parties:

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties hereto that the above appeal for reappraisement covers an importation of N–4–Acetyl Sulfanilamide exported June 22, 1956 from Germany which was appraised on the basis of American selling price at $1.00 per pound, less 1% packed, in accordance with Paragraph 28 of the Tariff Act of 1930; that the facts upon which the American selling price was determined were as follows: (1) that on or about the time of exportation, there was only one domestic manufacturer or producer of this merchandise, which manufacturer sold its entire output to customers other than the amount required for its own use; (2) that on or about the time of exportation, no other domestic manufacturer or producer sold a product competitive with the imported merchandise; (3) that the domestic manufacturer mentioned in "(1)", *supra*, did not sell on or about the date of exportation to anyone other than its said customers.

IT IS FURTHER STIPULATED AND AGREED, if the Court is of the opinion that the American selling price as defined in Section 402(g) of said Act did not exist on or about the date of exportation of the merchandise covered by the above appeal for reappraisement, that the United States value at that time was $0.562 per pound, net packed.

IT IS FURTHER STIPULATED AND AGREED that the attached copy of a letter dated October 7, 1957, from Deputy Commissioner Walter G. Roy, U.S. Bureau of Customs, to the U.S. Appraiser of Merchandise, and the attached copy of a letter dated January 24, 1958, from B. H. Flinn, Chief, Division of Entry, Value and Penalties, U.S. Bureau of Customs, to Eugene R. Pickrell, be admitted in evidence as Plaintiff's Collective Exhibit 1.

Section 402(g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, 52 Stat. 1081, reads as follows:

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for

domestic consumption in the ordinary course of trade and in the usual whole-sale quantities, at the time of exportation of the imported article.

It appears that the letter of October 7, 1957, addressed to the United States Appraiser at New York by the Deputy Commissioner of Customs (plaintiff's collective exhibit 1), referred to in the stipulation entered into between the parties herein, relates to the importation at bar, a coal-tar intermediate, and states that Henley & Co., Inc., the actual importer of the merchandise, requested the Bureau of Customs to review the question whether domestically produced N-4 Acetylsulfanilamide, a coal-tar intermediate, considered by the appraiser as comparable to the involved merchandise, was freely offered for sale within the meaning of the American selling price, as defined in section 402(g) of the Tariff Act of 1930. In said letter, the Deputy Commissioner states:

There is but one United States producer of the comparable product. The product is available for sale to a number of purchasers but the manufacturer accepts no orders from additional purchasers. You contemplate appraising the importation at $1 per pound, less 1 percent, packed, the price paid for the comparable domestic product by those to whom it is offered for sale.

The United States Court of Customs and Patent Appeals has construed section 402(g) as defining not only the price in the market of American produced goods but also the value of those goods where not sold under open market conditions. The price that the domestic producer "would have received" means the price that would have been received had the item been placed on the market and that, in this meaning, the wording is substantially the same as "reasonable value." *Hudson Shipping Company, Inc.* v. *United States* (1955), 43 C.C.P.A. 19, 30. [C.A.D. 604.]

The Commissioner then instructed the appraiser to "proceed with the final appraisement of the importation on the basis indicated." Subsequently, in the letter of January 24, 1958, addressed to the attorney for the importer herein (plaintiff's collective exhibit 1), the decision of the Bureau of Customs was adhered to as follows:

We have carefully studied the reasoning for your position on the points involved but on review remain of the opinion that the selling price on sales by the single United States producer of the intermediate determined to be comparable is ample evidence of the price that the producer "would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities," the alternative methods stated in section 402(g) of the tariff act for arriving at American selling price.

It appears pertinent therefore, in the above connection, to review the holding of our appellate court in the *Hudson Shipping Co., Inc.*, case, *supra.*

In the *Hudson Shipping Co., Inc.*, case, *supra*, certain importations of phthalic anhydride were appraised on the basis of American selling price, section 402(g) of the Tariff Act of 1930, as amended. The importer, on appeal in reappraisement, contended that such appraise-

ment was erroneous because on the dates of exportation of the involved importations, market conditions for the domestic product were such that it was impossible to find an "American selling price" which met the definition of the statute. The question before the appellate court was whether the trial court had erred in holding that the evidence was insufficient to make out a *prima facie* case that the "American selling price" formula could not be applied. It was observed by the appellate court that all of appellant's evidence was directed toward proving that there was no "price * * * at which such article is freely offered for sale to all purchasers * * *," and that none of the evidence bore on the question of whether there was a "price that the manufacturer, producer, or owner would have received or was willing to receive." In connection with the first definition of "American selling price" under section 402(g), *supra*, our appellate court, in the *Hudson Shipping Co., Inc.*, case, *supra*, cited with approval the case of *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 299, T.D. 40313, wherein the court, in the latter case, at page 303, stated:

The American selling price and the United States value, as defined in administrative section 402, do not permit the making of artificial prices or the control by domestic interests of the duties to be assessed on foreign goods. The American selling price and the United States value is not the price at which domestic products are offered to a favored few in limited quantities in a market specially created or restricted for the purpose of fixing the duties to be assessed on importations, but it is the price at which such products are freely offered for sale to all comers in the usual wholesale quantities and in the principal markets established for such goods in the ordinary course of trade. Individuals, firms, or corporations having a monopoly of some particular commodity can not establish the statutory American selling price by special factitious offerings or by sales to controlled or favored purchasers or by transfers of less than the usual wholesale quantities or by transactions in a market not recognized by the trade and not developed in the ordinary course of business.

In discussing the alternative definition of "American selling price" in section 402(g) of the tariff act, *supra*, our appellate court, in the *Hudson Shipping Co., Inc.*, case, also cited the case of *United States* v. *General Dyestuff Corp.*, 19 C.C.P.A. (Customs) 410, T.D. 45577.

In the *General Dyestuff Corp.* case, *supra*, speaking of section 402(f) of the Tariff Act of 1922 (the predecessor of section 402(g) of the present act) our appellate court said:

It will be noted that said section 402(f) establishes two methods by which the American selling price of an article may be fixed: First—

the price * * * at which such article is freely offered for sale to all purchasers * * *;

second—

the price that the manufacturer * * * would have received or was willing to receive for such merchandise when sold in the ordinary course of trade. * * *

The court, in the *Hudson Shipping Co., Inc.*, case, *supra*, at page 28, stated:

If American selling price may be established by alternative findings, then, in this case, appellant has not made out a *prima facie* case unless he offers evidence tending to negative the existence of each alternative. The presumption is that the appraiser has found facts that would support an American selling price valuation. If importer should prove that there was no freely offered price, the inference is not that the appraiser acted incorrectly, but that he found that there was a price the American owner would have received or was willing to receive. Not until importer presents evidence on this point also does he establish a *prima facie* case.

Further discussing the alternative definition of "American selling price," as found in section 402(g), *supra*, namely, the price "that the manufacturer, producer, or owner would have received or was willing to receive," the court, in the *Hudson Shipping Co., Inc.*, case, *supra*, at page 29, observed:

Thus, as we construe section 402(g), it defines not only the *price* in the market of American produced goods, but also the *value* of those goods where not sold under open market conditions. It may be asked how one could find the price that the American manufacturer would have received or was willing to receive. We do not construe the words "would have received" so that they mean the same as "was willing to receive" for that would make the statute unnecessarily redundant. We feel that the price that the producer would have received means the price that would *have been* received had the item been placed on the market. In this meaning, the wording is the equivalent substantially of "reasonable value," and there are no serious difficulties in finding such a value. * * * [Italics quoted.]

After pointing out that the appraiser had as a basis of valuation the price that was being received upon valid contracts by the "major" producers, the price that was being quoted for future delivery by one of the major producers, and the price at which the foreign product was being sold, the court in the *Hudson Shipping Co., Inc.*, case, *supra*, held that the appraiser could have used any of this pertinent data in finding the price the American producer or owner would have received had he placed his product for sale. The court thereupon concluded, as heretofore indicated, that, since appellant had offered no evidence tending to negative the possibility of a correct American selling price appraisal under the second part of section 402(g), appellant had not overcome the presumption of correctness attaching to the appraiser's valuation, and that it did not make out a *prima facie* case.

Counsel for the plaintiff in the case at bar argues basically that there is no American selling price for the product here imported within either the first definition of section 402(g), *supra*, or within the second definition of said section, in that the domestic comparable product was not "freely offered for sale for domestic consumption to all purchasers," and in that there was no price that the manufacturer, pro-

ducer, or owner "would have received or was willing to receive" for such merchandise when sold for domestic consumption, in the ordinary course of trade and in the usual wholesale quantities. In this connection, plaintiff contends that the record establishes that the domestic producer of the comparable product offers such merchandise only "to a favored few" and does not freely offer it to all purchasers, and that there was thus no "American selling price" for the domestic product, and that, accordingly, appraisement of the imported merchandise on that basis was erroneous.

In the second paragraph of the letter dated October 7, 1957, addressed to the Appraiser of Merchandise at New York (plaintiff's collective exhibit 1), the following statement appears:

There is but one United States producer of the comparable product. The product is available for sale to a number of purchasers but the manufacturer accepts no orders from additional purchasers.

Plaintiff, in its reply brief, in support of its contention that the domestic manufacturer does not freely offer its product to all purchasers, argues that the above statement establishes that the "manufacturer has certain regular customers and will not sell to anyone else" and that "It follows that these customers have been *selected* by the manufacturer since he will not sell to anyone else." [Italics by importer.] I do not construe the statement in question in the same light as that advanced by plaintiff's counsel. The stipulated facts in this case establish that the domestic producer or manufacturer actually sold all of the production, less the amount required for its own use. The fact that, in the case at bar, the domestic producer "accepts no orders from *additional* purchasers" [italics supplied] does not create a monopoly with respect to the domestic comparable product and does not of itself indicate a selling price "by special factitious offerings or by sales to controlled or favored purchasers or by transfers of less than the usual wholesale quantities or by transactions in a market not recognized by the trade and not developed in the ordinary course of business," a situation which our appellate court, in the *Kuttroff* case (12 Ct. Cust. Appls. 299, T.D. 40313), held would preclude a finding of value based upon the American selling price of a competitive domestic product. There is nothing in the record herein to establish that any available stock was not freely offered or sold by the domestic producer to prospective purchasers up to the limit of the manufacturer's selling capacity, or that sales of the comparable product were refused to such buyers, or to establish that such sales of the domestic producer as were made were to "selected" purchasers so as to negative a finding of value based upon a free offering to all purchasers in the ordinary course of trade in the domestic market such as it was. There were burdens of proof imposed upon the plaintiff in order to overcome the presumption of

correctness attaching to the appraiser's finding of value. *United States* v. *Gane and Ingram, Inc.*, 24 C.C.P.A. (Customs) 1, T.D. 48264. These burdens, in my opinion, have not been met by substantial proof on the part of the plaintiff.

Upon a full consideration of the record before me, I find as facts:

1. That the involved merchandise consists of N-4 Acetylsulfanilamide, a coal-tar product, which was exported from Western Germany on June 22, 1956.

2. That the merchandise was appraised on the basis of American selling price, section 402(g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, at $1 per pound, less 1 per centum, packed.

3. That, on or about the time of exportation of the involved merchandise, there was only one domestic producer or manufacturer of such merchandise, which producer sold its entire output to customers, other than the amount required for its own use, at $1 per pound, less 1 per centum, packed.

4. That there is no evidence of record to establish that said domestic merchandise was not so sold or freely offered for sale to all purchasers, in accordance with the provisions of American selling price, as defined in section 402(g) of the Tariff Act of 1930, as amended, *supra*.

I conclude as matters of law:

1. That the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

2. That American selling price, as that value is defined in section 402(g) of the Tariff Act of 1930, as amended, *supra*, is the proper basis for the determination of the value of the merchandise here involved.

3. That such value is the appraised value.

Judgment will be entered accordingly.