**SHANNON LUMINOUS MATERIAL COMPANY and Frank P. Dow Company, Inc.**

**v.**

**UNITED STATES.**

**C. D. 4476; Court Nos. R70/5047, etc.**

United States Customs Court.
Oct. 17, 1973.

See also, Cust.Ct., 349 F.Supp. 1000.

Glad & Tuttle, San Francisco, Cal. (Edward N. Glad, San Francisco, Cal., of counsel), for plaintiffs.

Irving Jaffe, Acting Asst. Atty. Gen. (Herbert P. Larsen, New York City, and

David A. Ast, trial attys., Staten Island, N. Y. ), for defendant.

RE, Judge:

The legal question presented in this case pertains to the proper dutiable value of a fluorescent dye. It was manufactured by L. B. Holliday Co., Ltd. of England, and is described on the invoice as "Fluorescent Brilliant Yellow R".

The merchandise was exported from England during the period between February 14, 1969 and July 29, 1969,[1] and was appraised on the basis of the American selling price at $18.70 per pound, less 1 percent, net packed.

The parties agree that the American selling price, as defined in section 402(e), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956,[2] is the proper basis of appraisement, and that the merchandise is not on the Final List, T.D. 54521. Plaintiffs, however, contend the proper American selling price should be $13.52, less 1 percent, net packed.

The record discloses that the merchandise is a benzenoid derivative which serves as an ingredient in a fluorescent oil. It is used for the non-destructive testing of metal parts such as jet engine turbine blades or aircraft structural parts. The parts are immersed in the oil, a surface penetrant, which enters any cracks, microscopic or otherwise, which are present on the parts' surface. The oil is subsequently removed by washing or by an appropriate solvent, leaving entrapments of the fluorescent oil in any surface cracks. The parts are then inspected under black light, and the presence of the entrapments of fluorescent oil are detected by their fluorescence.

As of January 1969 the only domestic source of this particular dye was General Aniline and Film Company, also known as General Dye (hereinafter referred to as GAF). Prior to January 1969, there were two other sources, but they discontinued production. On January 6th and January 20th of 1969, GAF delivered two shipments of the merchandise to plaintiff, Shannon Luminous Material Company, hereinafter referred to as Shannon, at $13.51 per pound, plus 1 cent extra for delivery west of Denver, less 1 percent for cash. When GAF increased its price to $18.70, Shannon discontinued its purchases from GAF and began purchasing the dye from the Holliday company. Recently, Shannon entered into a contract with the Morton Chemical Company, a division of Morton Salt, a domestic firm which has started production of the dye. GAF, Holliday and Morton sell the dye under different designations, and no reference will be made to the technical names given to the merchandise.

In addition to a number of exhibits, each party called one witness at the trial. Plaintiffs' witness was Mr. James Reid Alburger, a registered electrical engineer and chemical manufacturer. At the time of the trial, Mr. Alburger was president of Shannon Glow Incorporated and sole owner of Shannon Luminous Material Company, one of its divisions. Mr. Alburger directed the entire operation of both firms and supervised the purchasing agent. He was familiar

---

1. The six dates of exportation were as follows: February 14, 1969; March 5, 1969; April 29, 1969; June 9, 1969; July 4, 1969; and July 29, 1969, and the six appraisement appeals were consolidated for trial.

2. Section 402(e) provides in pertinent part as follows:

"For the purpose of this section, the American selling price of any article produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the article in condition packed ready for delivery, at which such article is freely sold or, in the absence of sales, offered for sale for domestic consumption in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such article when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article."

with the imported merchandise invoiced as "Fluorescent Brilliant R" with a color index number of "Solvent Yellow 43". Mr. Alburger testified that Shannon was the major purchaser of this dye from GAF. After GAF increased its price to $18.70, Shannon turned to the Holliday company.

Mr. Alburger testified that he ceased purchasing from GAF and began purchasing from Holliday because late in January 1969, a Mr. McCord, alleged to be the western regional manager of GAF, related to him that GAF would no longer be able to supply flurol, i. e., the merchandise at bar. Mr. Alburger testified that Mr. McCord stated that GAF was going to discontinue production of the dye, and that the small amount remaining would be sold at $18.70 per pound. Mr. Alburger asserted that this conversation was the catalyst that precipitated Shannon's search for a new supplier. Apart from the alleged conversation with Mr. McCord, Mr. Alburger admitted that he did not know whether GAF had, in fact, discontinued production of the dye. Indeed, he testified that at the time of exportation of the merchandise at bar, he knew GAF had the merchandise, available for sale and delivery, at the price of $18.70 per pound.

Mr. Edward F. Greening, who testified for the defendant, was product manager for pigments at GAF and supervised the company's marketing efforts on pigments. His duties included compiling sales forecasts, assisting the sales force to develop new business, coordinating research and development efforts, and coordinating production activities with marketing.

The witness testified that during the period of exportation, the fluorescent dye in question was sold by GAF at $18.70 per pound, due to price increases that went into effect on February 1, 1969. Mr. Greening stated that the Bureau of Customs was notified of this price increase by letter, a copy of which was placed in evidence. Also, all branch offices were notified of the increase by teletype. It was GAF's company policy to notify customers of changes in prices by a form letter. Moreover, during the pertinent period of exportation, sales and deliveries of these products took place, and, as of the date of trial, GAF has not stopped selling or offering these products for sale. Mr. Greening testified that there were approximately 19 sales during March 1969, and 45 to 50 shipments during the period of exportation. To document the statement that GAF continues to produce and market these dyes, the current *GAF Pigment and Solvent Dyes, Price List,* was introduced into evidence. This booklet, on page 4, lists azosol and fluorol, the merchandise under consideration.

Simply stated, the question presented is whether plaintiffs have proven that the district director erred in appraising the imported merchandise.

It is fundamental in customs reappraisement cases that, not only must the plaintiff prove that the district director erred in appraising the importations, but it must also prove the correct appraisement. A. Zerkowitz & Co., Inc. v. United States, 58 CCPA 60, C.A. D. 1005, 435 F.2d 576 (1970); Hudson Shipping Co., Inc. v. United States, 43 CCPA 19, C.A.D. 604 (1955); Mary G. Ricks et al. v. United States, 29 Cust.Ct. 517, R.D. 8187 (1952).

In order to sustain their position plaintiffs must show that GAF did not freely sell or offer to sell these products after the sales of January 6, 1969 and January 20, 1969 at a price other than the appraised value. This position, however, is untenable in view of the undisputed facts that GAF continued to offer for sale and sold various quantities of fluorescent dye after January 20, 1969 and through July 29, 1969 at $18.70 per pound. It is therefore clear that plaintiffs have failed to bear their burden of proof. The following statements in Augusta Chemical Co. v. United States, 40 Cust.Ct. 845, 851, R.D. 9165 (1958), are applicable here:

" * * * the importer does not deny, but rather asserts, the existence

of an American selling price but, as in the *Hudson Shipping* case [43 CCPA 19, C.A.D. 604 (1955)], the plaintiff herein made no effort to offer in evidence any of the books of the major producers, or to call in representatives of the American companies who undoubtedly were familiar with the American selling price. Further, as in the cited case, the plaintiff here chose to rely upon 'letters and heresay [sic] statements,' which fall far short of discharging the burden resting upon the importer. * * *"

■ The crucial date for the determination of the American selling price is that of exportation. The evidence shows that the dates of exportation fall in the period between February 14, 1969 and July 29, 1969. The Court of Customs and Patent Appeals has construed the phrase "at the time of exportation" in section 402(e) broadly, so as not to require proof as to sales or offers on the particular date of exportation. As it stated in United States v. Robert Reiner, Inc., 35 CCPA 50, 55, C.A.D. 370 (1947):

> "* * * it has now become the settled rule that in construing the term 'at the time of exportation,' it should not be held that the exact date is required but only that, *prior to the exportation of the merchandise being valued, there had been at least one offer of sale* of imported prototype merchandise under conditions which would truly reflect the United States value of the merchandise under appraisal." (Emphasis added.)

■ It is not questioned that the value of the merchandise may be shown by sales or offers made prior to the date of exportation.

Plaintiffs, therefore, attempt to base their claim on two sales, January 6th and 20th, 1969, at the price of $13.51. They ignore, however, the fact that there was a supervening price increase implemented by GAF effective February 1, 1969, as well as sales and offers at the increased price of $18.70 during the period of ex-

portation. Hence, the plaintiffs' claimed price, based upon the January 6th and January 20th invoices, does not accurately reflect the American selling price of the merchandise as of February 14, 1969, the first date of exportation. The court, therefore, must find that plaintiffs have not proven that the lower price was the American selling price at the time of exportation.

■ In addition to their attack on defendant's exhibits and evidence, plaintiffs, in their brief, quote extensively from the case of Kuttroff, Pickhardt & Co. (Inc.) v. United States, 14 Ct.Cust. App. 176, T.D. 41698 (1926). Surely no one, including the defendant, questions the rationale of the *Kuttroff* case that "[t]o establish the price which the producer would have received or was willing to receive it must at least appear that he had something to sell at that price, and also that he had or could produce enough to sell * * *." 14 Ct.Cust.App. at 185.

■ In the case at bar the evidence leaves no doubt that GAF "had something to sell at that price", and that it "could produce enough to sell". Plaintiffs cannot properly rely on the *Kuttroff* case because clearly this is not a case whereby "the mere declaration of a possible producer that he was willing to sell at a named price would enable him to compel an appraisal at a value which did not then exist and might never obtain." *Ibid.*

In the *Kuttroff* case the appellate court stated:

> "To freely offer an article for sale within the contemplation of subdivision (f) it should, at least, appear that some reasonable quantity of the offered article was ready or could be produced for reasonably prompt delivery. The existence of the article should be so advertised, mentioned, made known, or called to the attention of potential customers that they might or could learn that it was possible to procure the same. Sandoz Chemical Works v. United States, 13 Ct.Cust.

Appls. 466, T.D. 41365; Kuttroff, Pickhardt & Co. v. United States, 12 Ct.Cust.Appls, 299. It would be natural to expect also that customs authorities would be informed of its existence." 14 Ct.Cust.App. at 184.

In view of plaintiffs' great reliance upon the *Kuttroff* case, it is well to note the following grounds upon which it is easily distinguishable from the case at bar:

(1) Here, sales of the merchandise ranged from 45 to 50 transactions during the period in question;

(2) The merchandise was not merely the isolated remnants of prior stock, but rather was part of a sustained inventory ready for delivery at all times;

(3) A form letter (defendant's exhibit C) was sent by GAF to branch offices to be distributed to individual customers for the merchandise to notify them of the price increase; and,

(4) Defendant's exhibit E is a current price list which includes the merchandise.

Plaintiffs further contend that defendant's witness had no personal knowledge of the pertinent facts, and that the preponderance of the credible evidence reveals the American selling price of the merchandise herein was $13.52 per pound less 1 percent, net packed.

In his position as the product manager for pigments, Mr. Greening is responsible for overseeing the company's marketing efforts on pigments, and his duties require a knowledge of GAF policies and practices. Mr. Greening testified that GAF maintains records on the sales of its products, and, as product manager for pigments, these records are available to him. He testified that, effective February 1, 1969, there was a price increase for the merchandise in question. He identified and described the all-branch teletype issued from the New York office of GAF to all of GAF's sales branches announcing the price rise. Additionally, he identified the letter from GAF's customs representative in New York to the regional commissioner of customs which informed the Bureau of Customs of the increase in price of the merchandise, effective February 1, 1969, from $13.51 per pound to $18.70 per pound. He testified further that the new base price of $18.70 per pound was charged on all orders received after February 1, 1969, and that GAF has never stopped selling or offering to sell the merchandise in question.

The attack on Mr. Greening's credibility is unwarranted, and the court does not agree that his testimony is entitled to "little or no credence." More to the point, however, is the firm belief that the plaintiffs have not established that GAF discontinued the production of the merchandise after January 20, 1969 or that the American selling price was $13.52 per pound, less 1 percent, net packed, as alleged.

On the record before it, therefore, the court makes the following findings of fact:

1. That the merchandise in question is "Fluorescent Brilliant Yellow R", exported from England during the period of February 14, 1969 to July 29, 1969.

2. That the merchandise was appraised on the basis of American selling price, as defined in section 402(e), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at $18.70 per pound, less 1 percent, net packed.

3. That the plaintiffs have failed to establish that GAF has ceased production, sales or offers to sell, like or similar domestically produced dyes during February to July 1969.

4. That plaintiffs have failed to introduce evidence of sales or offers to sell, like or similar domestically produced merchandise at the time of exportation of the imported merchandise, at a price other than $18.70 per pound.

The court, therefore, concludes as a matter of law:

1. That American selling price, as that price is defined in section 402(e), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is

the proper basis for appraisement of the merchandise here involved.

2. That the presumption of correctness attaching to the appraiser's determination of value for the merchandise in question has not been overcome.

3. That the American selling price for the merchandise is properly represented by the appraised values.

In view of the foregoing, the appraisement is hereby affirmed. Judgment will issue accordingly.