## H. REDFERN *v.* UNITED STATES (No. 3155) [1]

United States Court of Customs and Patent Appeals, June 12, 1929

*Allan R. Brown* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedter* and *Fred J. Carter,* special attorneys, of counsel), for the United States.

[Oral argument May 6, 1929, by Mr. Brown and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and GARRETT, Associate Judges [2]

BLAND, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the first division of the United States Customs Court reversing the decision of the single

[1] T. D. 43453.
[2] LENROOT, Judge, did not participate in this decision, the case having been argued before he took his seat.

justice in a reappraisement involving the dutiable value of certain white cloth used for making waistcoats, and imported from Manchester, England.

The merchandise in question was invoiced and entered in pounds sterling at prices claimed to be the foreign and export value thereof and was appraised by the local appraiser upon the basis of the United States value. The single appraising justice sustained the invoice value without stating whether or not foreign value or export value was found. The Government appealed, and a majority of the division held that there was no foreign value or export value shown. It reversed the decision of the single appraising justice and affirmed the appraised values. The merchandise was consigned by the manufacturers thereof, the Bury Quilting Manufacturing Co. (Ltd.), to their sales manager in New York, Harry Redfern, the appellant herein. The merchandise was exported on or about May 20, 1927.

At the trial before the single appraising justice, the affidavit of James Milnes, who was director of the manufacturing company and in charge of their sales, was introduced, which affidavit was to the effect that "identical merchandise was being freely offered for sale to all wholesale dealers in the usual wholesale quantities in Great Britain," to which affidavit were attached copies of letters to 12 wholesale dealers of Great Britain, offering to sell the merchandise at prices substantially the same as the entered value of the imported merchandise. The affidavit stated that, after making said offers and up to the time of making the affidavit, although the offers were continued, the fact that "There were not any acceptances of said offers deponent believes was due to the fact that other manufacturers in Great Britain were offering commercially similar merchandise at lower prices than the prices of the Bury Quilting Manufacturing Co." (Appellant's counsel stated, in argument, that he did not know why these sales were not proved in order to show foreign value.) The affidavit further states that the same manufacturer sold to Geo. W. Heller (Inc.), of New York, 20 pieces of identical merchandise on July 8, 1927, at the same price as is shown by the invoice of the merchandise at bar.

It is admitted by all parties concerned that there were no actual sales.

The Government introduced in evidence the special agent's report in which is found the following:

I beg to report that I interviewed, June 14, 1927, Mr. Milnes, director, and Mr. Ellis, manager, of the Manchester office of the above-named manufacturer and received the following information from them: * * *.

Mr. Milnes said that in this type of goods, they have to reserve one pattern to a single customer and can not sell the same patterns they sell in America to merchants in the home market as they might sell to American customers and thereby come in conflict with their American market. He also said that the

patterns could none of them be compared on account of the variation of materials used according to the pattern.

Accompanying the special agent's report was a letter signed by James Milnes, chairman of directors, to the United States Treasury Department in which is found the following:

Since the beginning of this year, all goods consigned to the United States of America have been offered to similar consumers on this side, at consignment prices, without any result.

In the court below, importer's counsel, Mr. Strauss, made the following admission:

I might say to you, one of the reasons we have not been able to sell over there is because France exports into England similar goods which they sell lower than we can.

In the opinion of the majority of the division below, after referring to the evidence, is found the following:

The offers thus referred to by the affiant are manifestly relied upon as establishing foreign market value, but we do not consider that they are sufficient for that purpose.

It is significant, we think, that the 12 offers in writing of like merchandise to English firms, which are attached to the affidavit of Mr. Milnes, are each dated May 19, 1927, while the shipment of the merchandise covered by the initial appeal was apparently only 8 days later.

There is nothing to indicate, beyond the expression in the affidavit, that a single offer was made in addition to those already enumerated, either before or after May 19, 1927. It is true that it does appear that 20 pieces of merchandise identical to item 1391 were sold to Geo. W. Heller (Inc.), of New York, but even this limited sale was from two to four months after the exportation of the merchandise in question.

We find that the evidence fails utterly to establish either foreign or export values for the merchandise involved. It may well have been that the merchandise was not adapted to the English market.

A reasonable construction of the words "freely offered for sale to all purchasers in the principal markets of the country from which exported" contemplates sales as well as offers. Where no actual sale of merchandise has ever been made in a foreign country it can not be said that there is in that country a market for such merchandise.

As affecting the issues in the case, appellant's counsel makes the following statement in his brief:

The proof of foreign market value consisted of proofs of offers of sale. It is conceded that there were no actual sales. On this phase of the case the issue is whether or not section 402 (b) in defining foreign value as the price at which such or similar merchandise is freely offered for sale, requires the proof of sales as well as offers. The majority of the First Division held that a reasonable construction of the words contemplates sales as well as offers. It is contended that this was error. The words of the statute are plain in their intendment and are not subject to construction at all. In any event, they are not susceptible of the construction put upon them by the majority opinion of the First Division.

The learned counsel for appellant refers to the statement above quoted: "A reasonable construction of the words 'freely offered for

sale to all purchasers in the principal markets of the country from which exported' contemplates sales as well as offers," and argues that this statement is an erroneous conclusion of law; that because of the erroneous statement of the law the case must be reversed, and suggests that, probably, the proper course would be for this court to reverse the cause and remand the same to the court below, and that the remand should call attention to the alleged incorrect statement of law and require a finding of fact upon the question as to whether or not offers were made.

Our attention is called to the decision of this court in *Robinson & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 644, T. D. 41486. There the provision for export value in section 302 of the emergency Tariff Act of 1921, which defined export value as "the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is *sold* or *freely offered for sale* to all purchasers" was under consideration. (Italics ours.) There we said:

Under the emergency tariff act mere offers for sale if made to all persons desiring to purchase goods for export to the United States were just as effective in making export value as sales actually made and concluded.

    \*        \*        \*        \*        \*        \*        \*

If Congress intended that only sales passing title should be determinative of export value, it would have defined export value as the price at which merchandise was *sold* for export to the United States and left out of the "equation" the price at which such merchandise was freely offered for sale to all purchasers.

In the Tariff Act of 1922, section 402 (b), the word "sold" is omitted and the words "freely offered for sale" are used. It is argued by importer that by the change Congress meant to say that offers of sale "to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade," would be sufficient evidence of foreign value, and that the court below, by holding that the use of the term "contemplates sales as well as offers," has incorrectly construed the language used. Immediately following the last-quoted phrase, the learned court below also stated:

Where no actual sale of merchandise has ever been made in a foreign country, it can not be said that there is in that country a market for such merchandise.

This statement may be intended to convey the thought that there could be no *ordinary course of trade* unless there were actual sales, or that, unless there were actual sales, there would be no *principal market* for this or similar merchandise, or that, without sales, there could be no usual wholesale quantities.

This court, in *Robinson & Co. et al.* v. *United States*, *supra*, expressed its views as to the application to be given to the phrase "freely offered for sale"; also in more or less analogous situations has it expressed its views as to the meaning of "freely offered for

sale to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market" as used in section 402 (f) of the Tariff Act of 1922, which defines American selling price. See *Kuttroff, Pickhardt & Co., Inc.*, v. *United States*, 14 Ct. Cust. Appls. 176, T. D. 41698; *Kuttroff-Pickhardt & Co., Inc.*, v. *United States*, 14 Ct. Cust. Appls. 381, T. D. 42032; and *Sandoz Chemical Works* v. *United States*, 13 Ct. Cust. Appls. 466, T. D. 41365.

While not essential to the decision of the matter at hand, it is not without interest to note that the phrase "freely offered for sale," under consideration in the last three cited cases, is in connection with *American selling price*, whereas the offers referred to in *Robinson & Co. et al., supra*, and in the case at bar are concerned with *export and foreign value*. The former has to do with a United States market; the latter, a foreign market.

As we view the issue at hand, it is not necessary for us, upon this record, to decide the question as to whether or not there must be sales of such or similar merchandise shown in order to establish that there was a free offering for sale of the same to all purchasers in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade, and we do not decide that question. As we interpret the language used by the court below, the issue is as to whether or not there was any substantial evidence in the record to support the finding that there were, in fact, no offers made which were within the meaning of the statute.

The court below may have given controlling effect to the statement of Mr. Milnes, contained in the report of the special agent, to the effect that "They have to reserve one pattern to a single customer and can not sell the same patterns they sell in America to merchants in the home market as they might sell to American customers and thereby come in conflict with their American market." If it was a fact that the manufacturer could not sell and would not sell, the court below may have concluded that the offers purported to have been made were not, in fact, offers, were not *bona fide*, were mere gestures, and were not sufficient to constitute proof of foreign value, within the meaning of the statute. We think the record contains substantial evidence to sustain this view of the court below.

We agree with the finding of the court below that the evidence failed to establish export value of the merchandise involved. It is not contended that the sales of the merchandise under consideration established export value, and proof of the one other sale falls far short of showing that such or similar merchandise was freely offered to all purchasers in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States.

Therefore, since we conclude that the court below found that there were no offers of the kind and character indicated above, showing foreign value, and that there was proper substantial evidence to support this finding, its judgment must be *affirmed*.