(A. R. D. 59)

UNITED STATES *v.* AMERICAN AGAR & CHEMICAL CO.

Entry No. 8–C.

First Division, Appellate Term

(Decided on rehearing [A. R. D. 19] April 13, 1955)

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.

*Philip Stein* (*Marjorie M. Shostak* of counsel) for the appellee.

Before OLIVER, MOLLISON, and FORD, Judges; OLIVER, C. J., dissenting

MOLLISON, Judge: This case is before us on rehearing granted after the rendering of the decision of this division in the case of *United*

*States* v. *American Agar & Chemical Co.*, 30 Cust. Ct. 607, A. R. D. 19, which reversed the decision of the trial judge, reported in *American Agar & Chemical Co.* v. *United States*, 27 Cust. Ct. 383, Reap. Dec. 8020, insofar as it held that a foreign value existed for the bleached flake agar-agar in question, and that such value was $2.25 per pound, net packed, f. o. b. Ensenada, Mexico.

In our previous decision, we held that there was no market and no foreign value for merchandise such as or similar to that here involved for home consumption in Mexico, inasmuch as no purchasers for the offered merchandise could be found. The implications of that holding have been brought to our attention by timely motion for rehearing, we granted the same for the purpose of reexamining the matter.

The findings of fact and conclusions of law contained in the previous decision, with respect to the nonexistence of merchandise similar to that here involved and the absence of an export value for merchandise such as that here involved, have not been disputed and are not involved at this time. We adhere to the findings and conclusions made in those respects and address ourselves to the question of whether the evidence before us will support the claim made on behalf of the plaintiff-appellee that a foreign value, as that term is defined in section 402 (c), as amended, of the Tariff Act of 1930, existed for merchandise such as that at bar, and, if so, whether the evidence shows what that value was.

The evidence as to the existence of offers to sell bleached flake agar-agar such as that here involved at or about the time of exportation of the instant merchandise is contained in the oral testimony given by Benjamin W. Shipman, vice president of the plaintiff company, and by Lucian K. Small, president of the said company, and in the affidavit of Francisco Cendejas, president of Alga-Mex, S. A. de C. V., shown to be the only producer of agar-agar in Mexico at the time here pertinent other than the exporter of the merchandise at bar.

It appears that the knowledge of the plaintiff's officers as to the offers for sale of bleached flake agar-agar such as that here involved came about in the following manner: The plaintiff company was interested in the exporter of the instant merchandise, Compañía Mexicana de Agar, S. de R. L. (hereinafter referred to as C. M. A ), from two standpoints: (1) The plaintiff company had furnished money for the equipment and construction of the plant of C. M. A., and (2) the plaintiff company had the right to purchase excess raw materials of C. M. A. and the obligation, up to August 31, 1944, to purchase such finished agar-agar as C. M. A. did not sell in Mexico.

About the time of the exportation of the merchandise herein, the plaintiff company found that agar-agar was plentiful in the United States, and as the time when its obligation to purchase such agar-agar as was produced by C. M. A. and not sold in Mexico was approaching

a termination, the two officers of the plaintiff company sought to assist C. M. A. in disposing in Mexico of its accumulating inventory of agar-agar. It appears that, under its charter from the Mexican Government, C. M. A. was obliged to offer its merchandise for sale for domestic consumption in Mexico and that C. M. A. made approaches through correspondence with possible users in Mexico to sell its agar-agar in Mexico, but was unsuccessful in attracting customers.

On behalf of C. M. A., Mr. Shipman made inquiry at the American Embassy and of the Foreign Economic Administration unit in Mexico City, consulted trade publications, magazines, directories, etc., of the industries of Mexico which might use agar-agar, and approached prospects found through such sources personally and by letter, without success in finding a purchaser. According to his testimony, the terms of the offer were 26.14 Mexican pesos per kilo, equivalent to U. S. $2.45 per pound, f. o. b. Ensenada, packed, the price being in no way affected by the quantity purchased.

Mr. Shipman's testimony is corroborated by that of Mr. Small and the affidavit of Mr. Cendejas and is not controverted by any evidence offered in behalf of the defendant.

We are of the opinion from the entire record that agar-agar was a legitimate product to be offered for sale in Mexico. By that we mean that there was nothing in the nature of the product which would indicate that it was not marketable or salable in Mexico for home consumption, and apparently the only reason why it was not sold in Mexico was purchaser indifference or apathy. We are also of the opinion that real and actual efforts were made to sell the product and that the offers were not sham or feigned or made for some purpose other than actually to sell the merchandise.

We, therefore, conclude that the offers were bona fide, and, as we have indicated, the terms of the offers are established by the evidence as 26.14 Mexican pesos per kilo, equivalent to U. S. $2.45 per pound, f. o. b. Ensenada, packed, for any quantity. It is noted that there seems to be some conflict in the evidence as to whether the offered price for domestic consumption in Mexico was 24 pesos per kilo, equivalent to U. S. $2.25 per pound, as found by the trial court, but, in our view, the preponderance in weight of the evidence indicates that the said offered price was 26.14 Mexican pesos per kilo.

The only question remaining is whether the offers made, under the circumstances detailed above, satisfy the requirements of the statute to establish the existence of a foreign value for the merchandise. In our previous decision, citing H. Redfern v. United States, Reap. Circ. 1207, affirmed in Same v. Same, 17 C. C. P. A. (Customs) 117, T. D. 43453, we held, in effect, that a previous history of actual sales of the product in question would be necessary in order to establish the existence of a market, and that the existence of such market was a sine quo non of foreign value under the statute.

In the brief filed in support of the motion for rehearing herein, counsel for the appellee pointed out that, in its decision in the *Redfern* case, our appellate court specifically and expressly refrained from deciding the question of whether or not sales of merchandise such as or similar to that in issue must be shown in order to establish that there was a free offering for sale of the same under the requirements of the statute. Moreover, counsel referred to other holdings and observations by our appellate court to the effect that *bona fide* offers for sale are sufficient to establish a foreign or export value, notwithstanding no actual sales may have been made. Among cases in which such holdings or observations have been made are *Robinson & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 644, T. D. 41486; *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 176, T. D. 41698; *Kuttroff-Pickhardt & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 381, T. D. 42032; *Sandoz Chemical Works* v. *United States*, 13 Ct. Cust Appls. 466, T. D. 41365; *United States* v. *Baldwin Universal Co.*, 18 C. C. P. A. (Customs) 394, T. D. 44641; *Oceanic Trading Co.* v. *United States*, 21 C. C. P. A. (Customs) 146, T. D. 46478; *United States* v. *T. E. Ash (American Askania Corp.); Freedman & Slater*, 22 C. C. P. A. (Customs) 395, T. D. 47401; and *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A. (Customs) 199, C. A. D. 192.

A perusal of the opinions in these cases leads to the conclusion that actual sales are not necessary in order to establish the existence of a value for the merchandise involved under the requirements of the valuation statute. Further, it would seem that it is not necessary that a demand for the offered product exist or that there be persons desiring to purchase the same. In two of the cases, to wit, *Robinson & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 644, T. D. 41486, and *Kuttroff-Pickhardt & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 381, T. D. 42032 (citing and quoting from *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 176, T. D. 41698), "demand" and "persons desiring to purchase" were referred to in connection with offers for sale, but the element involved in those references was evidence of the *bona fides* of the offers.

In *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A. (Customs) 199, C. A. D. 192, at page 207, our appellate court indicated the approach to this question in the following language:

It is true that in the case of *United States* v. *Baldwin Universal Co., supra*, we stated, as hereinbefore quoted, that in any given case the facts might be such as to require evidence of sales under a price list in order to establish such price list as effective; *but it is plain that in such cases evidence of sales would be considered only for the purpose of establishing the bona fides of the offer.* [Italics added.]

Here there is no question as to the *bona fides* of the offer, and we hold that the nature and terms thereof, as shown by the record, bring it within the requirements of the statute.

It is argued on behalf of the appellant that the words "in the principal markets" and "in the ordinary course of trade," found in the valuation statute, indicate that the value contemplated thereby must be predicated upon sales as well as offers, the theory being that "trade" and "markets" imply a previous course of dealing in the merchandise involved. We do not consider this to be a valid argument in view of the many cases, hereinbefore cited, holding that actual sales are not required under the valuation statute, it being sufficient if the merchandise is actually offered for sale, and the offers *bona fide*. It would appear in this case that the "ordinary course of trade" was the manner of doing business conducted by C. M. A., the only offeror, and that the "principal market" was the place in which the merchandise was offered for sale, Ensenada, Mexico.

It was suggested in our previous decision that there existed on the part of the offeror only a "willingness to sell." "Willingness to sell" connotes a passive attitude which, upon reflection, we are of the opinion does not properly characterize the efforts made by C. M. A. and the president of the plaintiff company in its behalf to sell the merchandise for home consumption in Mexico. We think there was an active attitude toward the sale of bleached flake agar-agar which took the form of seeking out customers and making definite offers to them.

Upon the entire record before us we, therefore, find as facts:

1. That the merchandise consists of bleached flake agar-agar, manufactured by Compañía Mexicana de Agar, S. de R. L., of Ensenada, Mexico, and was exported from Mexico July 20, 1944.

2. That at the time of exportation all sales of such merchandise for export to the United States were restricted to the plaintiff.

3. That at the time of exportation no similar merchandise was sold or freely offered for sale, to all purchasers in Mexico, either for domestic consumption or for export to the United States.

4. That the price, at the time of exportation of the instant merchandise, at which such merchandise was freely offered for sale to all purchasers in Ensenada, the principal market therefor in the country of exportation, for domestic consumption, in the usual wholesale quantities and in the ordinary course of trade, was 26.14 Mexican pesos per kilo, net packed, f. o. b. Ensenada.

We conclude as matters of law:

1. That no export value, as defined in section 402 (d) of the Tariff Act of 1930, existed for merchandise such as or similar to that here involved.

2. That the proper basis of value of the agar-agar in issue is foreign value, as defined in section 402 (c) of said tariff act, as amended by the Customs Administrative Act of 1938.

3. That such value was 26.14 Mexican pesos per kilo, net packed, f. o. b. Ensenada, Mexico.

The decision and judgment below are modified accordingly.

### DISSENTING OPINION

Oliver, Chief Judge: This decision was originally prepared as a majority opinion. In dissenting from the reasoning and conclusions of my associates, I follow, with minor changes, my original opinion.

This case is a review of the decision in *American Agar & Chemical Co.* v. *United States*, 27 Cust. Ct. 383, Reap. Dec. 8020, wherein the trial judge upheld the importer's entered value as the statutory foreign value (section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938), of certain so-called bleached flake agar-agar, exported from Mexico in July 1944, and entered through the subport of San Ysidro, Calif. The matter was the subject of our decision in *United States* v. *American Agar & Chemical Co.*, 30 Cust. Ct. 607, A. R. D. 19 (hereinafter referred to as "the previous decision"), which reversed the judgment of the trial judge and held "That there is neither a foreign value nor an export value for the bleached flake agar-agar in question."

This application for review is before us now, for the second time, after granting appellee's motion for rehearing, which, as disclosed by counsel's brief in support of said motion, is based on the conclusion in the "previous decision," holding that "there was no market for the merchandise for home consumption. Without a market for home consumption, there can be no foreign value under the statute." The conclusions in "the previous decision," with respect to all other questions involved, have not been disputed. Hence, my discussion herein is limited to the particular question raised in appellee's motion for rehearing.

In view of the restricted phase of the case at this time, there is no necessity to repeat an outline of the evidence. A complete and exhaustive review of the record was made in "the previous decision," and, in my present view of the matter, I follow the factual findings previously set forth.

"The previous decision" held that there is no similarity between bleached flake agar-agar, the merchandise in question, and ground agar-agar, the product upon which the appraiser based his finding of value. The issue, therefore, is confined to bleached flake agar-agar such as that in question. On that point, "the previous decision" stated as follows:

The proof before us, as it relates to the issue of similarity, is sufficient to hold, in line with the statutory construction invoked in the cited authorities, that the agar-agar produced by Alga-Mex is not similar to the merchandise in question.

Thus we proceed to a consideration of the record as it relates to bleached agar-agar, such as that involved herein, as claimed by the importer. In this connection, the evidence is conclusive in showing that there had been no sales of such merchandise in Mexico at the time of exportation of the shipment under consideration. The trial court found *"from the evidence* that this merchandise was freely offered for sale in the principal market, Ensenada, at the date of exportation herein at the above price, packed in 5-pound bags." [Italics added.]

The approach for determining whether or not statutory foreign value exists for the merchandise in question was set forth in "the previous decision" as follows:

The most important element or requirement, under the circumstances developed herein, to establish foreign value within the foregoing definition [section 402 (c), as amended, *supra*] is the existence of a market. The point was brought out in the case of *H. Redfern* v. *United States*, Reap. Circ. 1207, affirmed in *Same* v. *Same*, 17 C. C. P. A. (Customs) 117, T. D. 43453. In that case, it was admitted "by all parties concerned that there were no actual sales." The lower court rejected the evidence attempting to show that the merchandise was freely offered for sale, and in the course of its decision, Reap. Circ. 1207, *supra*, made the following statement:

* * * Where no actual sale of merchandise has ever been made in a foreign country, it can not be said that there is in that country a market for such merchandise.

In affirmance thereof, the appellate court, T. D. 43453, *supra*, said:

This statement may be intended to convey the thought that there could be no *ordinary course of trade* unless there were actual sales, or that, unless there were actual sales, there would be no *principal market* for this or similar merchandise, or that, without sales, there could be no usual wholesale quantities. [Italics quoted.]

Disputing the applicability herein of the foregoing quotation from the appellate court's decision in the *Redfern* case, *supra*, counsel for appellee in his brief argues as follows:

Appellee herein respectfully submits, however, that the foregoing language of the *Redfern* case, *supra*, quoted and apparently considered controlling by this Honorable Division of the Court, *constituted mere dicta, not essential to a decision in that case*, and was so regarded by the Appellate Court itself in that case, wherein it further pointed out (17 C. C. P. A. (Customs) 117, 121): [Italics quoted.]

As we view the issue at hand, *it is not necessary for us, upon this record, to decide the question as to whether or not there must be sales of such or similar merchandise shown in order to establish that there was a free offering for sale of the same to all purchasers in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade, and we do not decide that question.* As we interpret the language used by the court below, the issue is as to whether or not there was any substantial evidence in the record to support the finding that there were, in fact, *no offers made* which were within the meaning of the statute. [Emphasis added.]

Whatever construction may be placed on the above-quoted language, the cases mentioned in appellee's brief should not disturb the conclusion reached in "the previous decision." The cases cited by

appellee will support the proposition, as stated in counsel's brief, *"that bona fide offers for sale are sufficient to establish a foreign market, notwithstanding no actual sales may have been made."* *Robinson & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 644, T. D. 41486; *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 176, T. D. 41698; *Kuttroff-Pickhardt & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 381, T. D. 42032; *Sandoz Chemical Works* v. *United States*, 13 Ct. Cust. Appls. 466, T. D. 41365; *United States* v. *Baldwin Universal Co.*, 18 C. C. P. A. (Customs) 394, 401, T. D. 44641; *United States* v. *T. E. Ash et al.*, 22 C. C. P. A. (Customs) 395, T. D. 47401; *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A. (Customs) 199, 205–206, C. A. D. 192. It is my view that none of those cases has application herein on the basis of the present record, which fails to establish that merchandise such as that in question was freely offered for sale *as required by the statute.* A brief outline of each follows to show wherein they are distinguishable from the present case.

The *Robinson & Co. et al.* case, *supra*, involved laces that were ordered either directly from the manufacturer in Switzerland or through the manufacturer's agent in New York, but, wherever the merchandise was ordered, it was always consigned to the manufacturer's agent in New York and billed by the consignee in the consignee's own name to the persons, firms, or corporations placing the order therefor. Payment was made to the agents and consignees of the manufacturer, and title to the laces remained in the manufacturer and shipper until the laces were actually delivered to the one that placed the order for them. The importer claimed, *inter alia*, that offers for sale could not be considered as evidence of export value when such offers related to sales actually accomplished in this country and not to sales to be completed in the foreign country. Emphasizing that offers for sale were sufficient to establish export value, the court stated that "mere offers for sale if made to all persons *desiring to purchase goods* for export to the United States were just as effective in making export value as sales actually made and concluded." [Italics supplied.] In the present case, the testimony of the vice president of the importing corporation shows that he made every effort to locate potential purchasers of bleached flake agar-agar, such as that in question, in Mexico, for home consumption, but could locate no one interested in the product. In other words, there were no persons "desiring to purchase" this merchandise in the country of exportation for home consumption. Hence, the pronouncement made in the *Robinson & Co. et al.* case cannot apply herein.

Another significant phase of that case is showing through stipulated facts, actual transactions based upon orders and acceptances. Referring to the effect thereof, the court stated:

* * * The orders and acceptances in this case were something more than mere offers to sell. They were binding agreements to *buy* and *sell* and were therefore just as dependable as actual sales for the purpose of ascertaining values. [*Italics quoted.*]

In the present case, no comparable situation exists.

In the case of *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States,* T. D. 41698, *supra,* the merchandise consisted of a coal-tar dye which was entered on the basis of United States value and appraised on the basis of American selling price of a competitive product manufactured in the United States. The issue involved interpretation of the statutory phrase, "freely offered for sale to all purchasers," which the court held to embody two essential factors. First of all, "Whether or not merchandise is freely offered for sale to all purchasers must depend upon the demand therefor and the number of purchasers thereof." Then, too, "to freely offer an article for sale * * * it should, at least, appear that some reasonable quantity of the offered article was ready or could be produced for reasonably prompt delivery." Under that judicial interpretation, appellee's contention is without merit because there was no demand for bleached flake agar-agar in Mexico for home consumption, as disclosed by testimony of the vice president of the importing corporation, who stated regarding his attempt to find a market in Mexico, that he employed "every type of publication to find people who would be in a line of business in the course of which a probability existed that they might use agar." At best, it might be said there was a willingness to sell this merchandise for home consumption in the country of exportation. But a mere willingness to sell "is no proof of market value or price at the time of exportation of the merchandise, as required by the statute," *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States,* 28 C. C. P. A. 19, C. A. D. 118.

The *Kuttroff-Pickhardt & Co. (Inc.)* case (T. D. 42032) followed, in substance, the case just hereinabove reviewed, T. D. 41698, *supra.*

The *Sandoz Chemical Works* case involved statutory language, as well as facts and circumstances, materially different from what is before us. There, the merchandise under consideration consisted of a coal-tar intermediate, used in the preparation of dyes, and the issue presented involved determination of statutory American selling price (section 402 (f) of the Tariff Act of 1922), which was satisfied by finding the price of an Americn competitive article at which the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold in the ordinary course of trade and in the usual wholesale quantities at the time of exportation of the imported article. It was shown that, in the ordinary course of trade, it was the practice for manufacturers of coal-tar dyes to have their products, with the prices therefor, listed in the Dye and Chemical Section of the

Treasury Department as evidence of what they would receive or were willing to receive for their merchandise. The court further found that "the market" for the product was "extremely limited, in fact, confined to one buyer, the Cincinnati Chemical Co., a customer of the appellant." In this case, the record shows that there were no buyers for bleached flake agar-agar, such as that in question, in the country of exportation for home consumption. The factual and legal phases of the said case are at such variance with the statute and record under consideration that further discussion thereof is deemed unnecessary.

The *Baldwin Universal Co., T. E. Ash et al.*, and *White Lamb Finlay, Inc.*, cases, *supra*, recognized the importance, in determining market value, of considering evidence relating to offers for sale made in the ordinary course of trade. In this case, the attempt by the American importer, as disclosed by the record herein, to find buyers of bleached flake agar-agar in the country of exportation for home consumption must be considered, in the light of all the circumstances surrounding the manufacture and the importation of the commodity in question, to have been an effort to establish a market for the product rather than offers for sale within the meaning of the statute.

The majority opinion accepts, as *bona fide* offers, the efforts of the importer to find purchasers of bleached flake agar-agar in Mexico for home consumption. The findings of my associates on this phase of the case are expressed as follows:

We are of the opinion from the entire record that agar-agar was a legitimate product to be offered for sale in Mexico. By that we mean that there was nothing in the nature of the product which would indicate that it was not marketable or salable in Mexico for home consumption and apparently the only reason why it was not sold in Mexico was purchaser indifference or apathy. We are also of the opinion that real and actual efforts were made to sell the product and that the offers were not sham or feigned or made for some purpose other than actually to sell the merchandise.

The negative reasoning employed in the foregoing paragraph is not based on record evidence. I find nothing in the present record to support the statement that "there was nothing in the nature of the product which would indicate that it was not marketable or salable in Mexico for home consumption." To say, as the majority does, that "the only reason why it [the merchandise in question] was not sold in Mexico was purchaser indifference or apathy" is a mere assumption, without foundation in fact. "The courts may not properly supply from imagination the essentials in which the proofs are deficient," *United States* v. *Malhame & Co.*, 19 C. C. P. A. 164 (at p. 171), T. D. 45276.

*Bona fide* offers, under the judicial authorities hereinabove set forth, must meet certain demands of the statute. The requirements of section 402 (c), as amended, *supra*, embody the statutory elements of "principal markets," "usual wholesale quantities," and "ordinary

course of trade." None of those factors is established herein to support appellee's contention alleging a foreign value for the present merchandise.

At this point, it should be repeated, as was stated in "the previous decision," that "Mexico, the country of exportation of the present merchandise, became the source of the bleached agar-agar in question after the outbreak of World War II, when the previous outlet from Japan stopped, so that the manufacture of the product under consideration was virtually a new industry at the time of exportation of the present merchandise." In other words, bleached flake agar-agar, such as that in question, was a new commodity in the country of exportation at the time of the shipment in question, and there was never a sale nor an acceptance of an offer for sale of the merchandise in Mexico for home consumption. Hence, it is fair to say that under such conditions there could be no *ordinary course of trade*, or there would be no *principal market*, or there could be no *usual* wholesale quantities.

Since the reasoning herein is consistent with that followed in "the previous decision," I conclude, as stated in A. R. D. 19, *supra*, "that while there may have been a willingness to sell bleached agar-agar for consumption in Mexico, no purchasers could be found. In other words, there was no market for the merchandise for home consumption. Without a market for home consumption, there can be no foreign value under the statute."

The recent decision of the United States Court of Customs and Patent Appeals in the case of *United States* v. *E. R. Squibb & Sons et al.*, 42 C. C. P. A. 23, C. A. D. 564, lends much support to the statutory interpretation, as hereinabove set forth. In eliminating foreign and export values as bases for appraisement of the steel drums under consideration in the cited case, the appellate court quoted with approval from the decision of the trial judge, *E. R. Squibb & Sons et al.* v. *United States*, 28 Cust. Ct. 560, Reap. Dec. 8094, as follows:

> The uncontroverted evidence before me discloses that while there were some sporadic, occasional, infrequent, and inconsequential sales of once-used drums in Iceland for home consumption, there were no regular dealers nor a ready market for such articles. Hence, it cannot be said that such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade within the contemplation of section 402 (c) of the Tariff Act of 1930, *supra*. * * *
>
> It follows that inasmuch as there were no regular dealers and no regular course of trade in the markets of Iceland for once-used drums there could be neither a foreign nor an export value for that commodity.

In the present case, there was neither a sale nor the acceptance of an offer of bleached flake agar-agar for home consumption in Mexico.

Nor was there any dealer in such merchandise for home consumption in the foreign country. Hence, *a fortiori*, the statutory construction invoked in the *E. R. Squibb & Sons et al.* case, *supra*, in eliminating foreign value, applies herein.

The value found by the appraiser should be held to be the proper value of the bleached flake agar-agar in question, and the judgment of the trial court should be reversed.