(Reap. Dec. 9116)

BAUSCH & LOMB OPTICAL COMPANY *v.* UNITED STATES

Entry No. 588, etc.

(Decided March 31, 1958)

*William H. Morris* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

DONLON, Judge:   Plaintiff imported raw optical glass from England and entered it on the basis of export value.   Defendant found a higher foreign value and appraised the glass on that basis.   The dispute is as to whether foreign value or export value should prevail.

Fourteen appeals to reappraisement are consolidated for trial. They are appeals from the appraisement of 14 separate shipments (and related entries) over a period of several months, between December 21, 1950, and November 28, 1951, of identical merchandise bought by plaintiff under a single contract.

Plaintiff was subcontractor for the prime contractor manufacturing bombsights for military aircraft.   As subcontractor, plaintiff was required to supply glass necessary for correct optical performance of the specially designed bombsight, according to specifications. Plaintiff was then of the view, and there is evidence to support its judgment, that the only available source of supply of raw optical glass conforming to the specifications was Chance Brothers, Ltd., in England.   The order was placed by transatlantic telephone for 1,000 pounds in September 1950, and, in October 1950, the order was increased to 2,000 pounds.   That is approximately the quantity of glass covered by these 14 entries.

There was some urgency about the matter, due to American involvement in the Korean War in late June 1950.   There is testimony that if glass were to be supplied which did not conform to specifications, radical re-design of the bombsight would have been necessary. There is no serious dispute either that this glass met the specifications, or that other glass meeting the specifications was not known to be available.

The dispute simmers down to the question whether, for purposes of appraisement under section 402, there is a foreign value for this glass. Plaintiff, claiming export value, has the burden of proving that there is no higher foreign value.

There is no doubt that Chance Brothers, Ltd., was, during the entire period of these importations, quoting this glass in its catalog and price lists for sale to customers in England.   Plaintiff concedes that, to this extent, offering of such glass was made.   What plaintiff argues is that, notwithstanding the catalog and price listings, the statutory ingredients of foreign value are not present.

There is evidence that, during the years 1950, 1951, and 1952, there were no home sales in England of this particular type of glass. There is evidence that the price at which the glass was listed, in the seller's price lists, was subject to a considerable range of quantity discounts, and that these discounts were changed during the period of these importations.   There is no evidence as to what the usual

wholesale quantity was. .Plaintiff denies that there was any usual wholesale quantity, since there were no sales.

On this state of the record, defendant argues that plaintiff not only has not proved that there is no foreign value, but has left the record in a situation where (failing evidence as to what usual wholesale quantity is) foreign value for this glass is the list price unreduced by any of the quoted quantity discounts. Plaintiff argues, to the contrary, that it has negatived the existence of a foreign value because, since there were no sales of such glass for domestic consumption, it may not be assumed that there was any usual wholesale quantity.

Before turning to consideration of the authorities, it is necessary to clear up a divergence of view, indicated in defendant's brief, as to whether or not there is proof before the court that *such* glass was actually sold in England for home consumption. Defendant's brief argues that *such* glass was not only offered for sale, but was sold "albeit in small quantities" to all home customers from 1947 to and including the period here involved. (Defendant's brief, 16.) Plaintiff argues that the evidence of record does not show any sale whatsoever of this particular type of glass during 1950, 1951, and 1952, and that defendant has distorted the statement of a witness that during 1951 home sales of minor types of optical glass were mostly in small quantities and has disregarded testimony of the same witness that during 1950, 1951, and 1952 no sales of this particular glass for home consumption could be found. (Plaintiff's reply brief, 3.)

I am of opinion that defendant is in error as to the proofs of record in this respect. There is no evidence that any sale of this glass was made for home consumption in England during 1950, 1951, or 1952. Indeed, the report of defendant's special agent (defendant's exhibit B) reveals not a single domestic sale of this glass during the period of time relevant here. There is, affirmatively, the testimony above noted that no such sales could be traced during the period with which this litigation is concerned. The testimony of the sales mananger of the Optical and Special Glass Division of Chance Brothers, Ltd., is that, during the entire period from first listing of this glass in the firm's 1947 catalog, through the year 1952, the only sale of *such* glass in England was 10 pounds ordered in 1949 as a sample.

Defendant's argument that proof of domestic sales of other minor optical glass, in small quantities, establishes the small quantity as the usual wholesale quantity of this particular glass, will be considered for what it is, an argument relating to *similar* rather than to *such* merchandise.

I find that seller's line of other minor optical glass is not, on the record before me, glass similar to the merchandise in issue here. There is a preponderance of evidence that only *such* glass was acceptable to the plaintiff's prime contractor, in fulfillment of Government specifications for the bombsights; that this glass was unique; and that

there was no other glass available that was similar in respect both to index and dispersion tolerances. It is unnecessary here to detail the reasons why careful conformity to specifications is essential in the optical glass that goes into the bombsight of military aircraft.

The case chiefly relied on by defendant does not support defendant's argument as to similarity, on the record before me. In *United States v. Thomas & Co. et al.*, 21 C. C. P. A. (Customs) 254, cited by defendant, the merchandise was paper cops or tubes, and paper bobbins, used to hold yarn during the spinning, twisting, or warping processes in textile mills. The tubes varied in the number and extent of inner corrugation rings, in diameter, in width, and other such respects. The record showed that, although not mechanically interchangeable, the tubes were commercially interchangeable. Our appeals court, in its opinion, noted that the variations in the bobbins and tubes made no difference in price and that they are "sold at the same price in this country as are the comparable tubes sold in the country of exportation."

It should be noted that the appeals court, referring to the decision below, said that the statement of this court "if taken literally, probably might be regarded as a little broad," but supported the view that acceptance of equality of commercial value is *an important element* in determining when goods are "similar" within the meaning of section 402 of the Tariff Act of 1930.

The appeals court, in the *Thomas* case, *supra*, analyzed many cases *pro* and *con* on the issue of similarity. Rejecting the concept of commercial interchangeability as an indispensable element of similarity, one of the appeals judges, in a concurring opinion, nevertheless, found similarity on other grounds, including the fact that the tubes and bobbins were "adapted to substantially the same uses, and are so used, and are therefore similar within the statute, notwithstanding that, as above set forth, I do not believe them to be commercially interchangeable."

Whether the rule is that of the majority in the *Thomas* case, that proof of commercial interchangeability is "an important element" in determining what goods are similar, or whether the rule may be that similarity exists when there is proof both of adaptation to substantially the same uses and of such use, the record here meets neither test. There is proof that the glass here involved was not commercially interchangeable with any other optical glass. There is proof that different glass could not be used, and was not used, for the bombsights for which this glass was imported.

As pointed out recently in *B. A. McKenzie & Co., Inc. v. United States*, 39 Cust. Ct. 680, Reap. Dec. 9012:

What constitutes similar merchandise for purposes of appraisement, is a much litigated issue. There is "no hard and fast definition for the word 'similar' which will always be a safe guide to customs officials in determining value."

*Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347. In final analysis, each case necessarily turns on its own proofs, subject to those general principles which our court of appeals has stated from time to time.

The proofs here support the finding that, within the meaning of section 402, there were no free offerings in England for home consumption of *similar* merchandise.

Were there such offerings of *such* merchandise? I find there were not. The quotation of prices subject to varying quantity discounts, read in conjunction with testimony that *no sales of such glass in any quantity* were made for domestic English consumption during the years 1950, 1951, and 1952, clearly does not support a finding that the conditions basic to foreign value of *such* merchandise have been met. To the contrary, plaintiff by its proofs has negatived such a finding.

There are several statutory elements of foreign value. Free offerings by catalog and price lists alone are not enough. Offerings must be in the usual wholesale quantity, in the principal market, and in the ordinary course of trade. Failing any of these components, foreign value in the statutory sense is not shown.

Whether or not actual sales are a *sine qua non* of foreign value, as has been argued, appears to me beside the point, on the record that is now before me. At the very least, it is necessary, when the proof is (as here) that there were no actual sales of such merchandise, that the terms of offering should be shown to be an established price to all comers, either for a fixed quantity which is the usual wholesale quantity, or (alternatively) for any quantity of the merchandise. Here, the proof is that there was no usual wholesale quantity associated with the price offering, both because none was fixed in the price list and because, there being no actual sales, the price lists are left as the only source of proof as to usual wholesale quantity. As to price lists, the proof is that there was not an established price that was offered for any quantity, but in fact there were quoted in the price lists different prices for different quantities.

In this respect, the proofs here of record preclude the finding for which defendant argues, that there is a foreign value for *such* glass. There is no usual wholesale quantity, an essential component of foreign value.

As has been observed many times, appraisement is technical. The burden of proof laid on importers is often heavy. However, it is not to be made, by the court, an impossible burden. Presumptions favor the Government, but a plaintiff may, by proper proofs, overcome these presumptions.

In appraisements, each case rests on its facts. General language in the opinion of the court in one case may be of little or no help in evaluating proofs adduced in another case, where the facts are quite

different. In none of the cases cited, or in cases found by research in chambers, were the facts those shown by the proofs here.

In *United States* v. *American Agar & Chemical Co.*, 34 Cust. Ct. 553, A. R. D. 59, the proofs of record showed free offering at list price *in any quantity*. The proofs here are of offerings at various prices for various quantities. Hence, there is not here, as there, an established price regardless of quantity. With different prices for different quantities, and no sales, the proofs show there was no usual wholesale quantity.

Similarly, in *United States* v. *T. E. Ash*, 22 C. C. P. A. (Customs) 395, our appeals court pointed out (p. 402) that the merchandise was freely offered to all purchasers at list prices net *for any quantity*, and held, therefore, there was foreign value.

In *United States* v. *M. Minkus*, 21 C. C. P. A. (Customs) 382, there was proof of actual sale in the foreign market for domestic consumption. Here, the proof is that there were no sales of such or similar merchandise for domestic consumption. The proofs in the *Minkus* case showed, as here, a system of quantity discounts. The trial court and appellate term both found that a usual wholesale quantity was shown. Reversing that decision, the appeals court said:

If the courts below were correct in holding, as they did, that the affidavit and the manufacturer's price list, disclosing several wholesale quantities—eight in all, each having a different market value or price—without evidence tending to establish which of the eight was the *usual*, was sufficient to establish a foreign value for the merchandise, there would be eight wholesale quantities, having eight different market values or prices, and as many different foreign values for such merchandise, without regard to the costs of containers, coverings, and other costs, charges, and expenses "incident to placing" it in "condition, packed ready for shipment to the United States." Such a situation is, obviously, not contemplated by the statute.

There being no evidence of record to establish, within the principles herein stated, that the "usual wholesale quantities" of the involved merchandise were "10,000 or more," there is no substantial evidence of record to support the judgment of the Appellate Division of the Customs Court, affirming the judgment of the trial court. (P. 389.) [Emphasis quoted.]

Defendant seeks to relate the quantities in which other optical glass was sold to the list prices of *such* merchandise, in order to complete evidence of a foreign value for *such* merchandise. For reasons above stated, I find this other optical glass to be not similar merchandise. There is no authority for interpolating a usual wholesale quantity of dissimilar merchandise into the statutory formula for arriving at foreign value of such merchandise.

It is not argued that, absent a foreign value, the statutory conditions for export value do not exist here, or that the export values are other than the respective entered values.

I find as facts:

1. That the merchandise of these appeals is raw optical glass, bought to buyer's specifications, and exported from England during the period between December 1950 and November 1951.

2. That, at the time of such exportations, such merchandise was freely offered for sale in England for home consumption to all purchasers, by catalog and at list prices, subject to graduated quantity discounts; and that there were no sales of such merchandise in any quantity in England for home consumption during such period.

3. That, at the time of such exportations, no merchandise, similar to such merchandise, was offered for sale or sold in England for home consumption.

4. That, at the time of such exportations, such merchandise was freely offered for sale to all purchasers at the fixed price of $3.68 per pound, without regard to quantity, in the ordinary course of trade, for export to the United States.

I conclude as a matter of law:

1. That, at the time of exportations, there was no foreign value for such merchandise, in usual wholesale quantities, as defined in section 402 (c) of the Tariff Act of 1930, as amended.

2. That export value, as defined in section 402 (d) of the Tariff Act of 1930 is the proper basis of value for appraisement of such merchandise.

3. That the export value of such merchandise is $3.68 per pound, as entered.

Judgment will be entered accordingly.