(A.R.D. 98)

UNITED STATES *v.* BAUSCH & LOMB OPTICAL COMPANY

Entry No. 588, etc.

First Division, Appellate Term

(Decided January 20, 1959)

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.

*William H. Morris* for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges; MOLLISON, J., concurring

OLIVER, Chief Judge: The appeals for reappraisement enumerated in schedule "A," hereto attached and made a part hereof, relate to certain raw optical glass, identified herein as type DBC–657508, exported from England and entered at the port of Rochester, N.Y. These 14 appeals for reappraisement, all of which were consolidated for trial, cover 14 separate shipments extending over the period from December 21, 1950, through November 28, 1951, and aggregating approximately 2,000 pounds of the merchandise.

The case is before us at this time as a review of the decision in *Bausch & Lomb Optical Company* v. *United States*, 40 Cust. Ct. 773, Reap. Dec. 9116, wherein the trial judge sustained the importer's entered value of the raw optical glass in question and held that export value, as defined in section 402(d) of the Tariff Act of 1930, is the proper basis for appraisement, and that such statutory value is the importer's entered value. The conclusion overruled the appraiser's finding of a higher foreign value, as such value is defined in section 402(c) of the Tariff Act of 1930, as amended.

Before the court below, appellant contended that statutory foreign value was the proper basis for appraisement of all of the glass covered by these appeals for reappraisement and that such statutory value for the merchandise was the value found by the appraiser. In this proceeding, the Government (appellant) has injected for the first time an alternative claim, alleging that if export value is found to be the proper basis for appraisement, then such value for the merchandise covered by reappraisements 264137–A to 264144–A, inclusive, is £1.12.0 (British currency) per pound, f.o.b., being equivalent to $4.48 per pound, which is higher than the importer's entered value and lower than the appraised value. In his brief, Government counsel admits that this alternative claim "was not specifically called to the trial Court's attention," nor was it "made in the brief filed by the Government with the trial Court." The decision herein includes the disposition of appellant's new claim.

At this point, it is appropriate to state that the question of similarity between the raw optical glass in question and comparable products sold for home consumption in the foreign market was discussed somewhat at length by the trial judge who held that "other minor optical glass is not, on the record before me, glass similar to the merchandise in issue here." Although appellant has assigned as error the conclusion of the court below on the principle of similarity,

and the matter is argued in the brief, Government counsel, during the course of his oral argument before us, altered appellant's position by confining its claim, with respect to foreign value, to alleged offers and sales of *such* merchandise for home consumption, and withdrawing its claim on the matter of *similar* merchandise. Accordingly, the discussion herein contains no comment concerning *similar* merchandise.

Appellant (defendant below) has filed 16 assignments of error. Our conclusion disposes of all without specific reference to each. The record consists of the oral testimony of three witnesses as well as documentary proof.

All of the witnesses who appeared herein are associated with the Bausch & Lomb Optical Company, the importer of the glass under consideration. Their combined testimony supports the following summation.

This particular item of raw optical glass, type DBC–657508, was specifically manufactured for bombsights. The dedicated use of this merchandise in bombsights for military aircraft compelled its manufacture to be in strict conformity with Government specifications. The optical properties of this glass are unique. It is a type of glass that is not commercially interchangeable with any other kind of optical glass. Its specific optical characteristics were essential to the bombsight of which it is an integral part. The use of any other type of optical glass would have required a complete redesign of the optical system of the bombsight. Optical glass of the desired characteristics was not available from any domestic source. Only the imported glass involved herein met the required specifications, and the only available source therefor was the foreign manufacturer and exporter.

In addition to the oral testimony, hereinabove set forth, appellee (plaintiff below) introduced into evidence an affidavit (plaintiff's exhibit 3), executed by the sales manager of the optical and special glass division of Chance Bros., Ltd., of England, the manufacturer and exporter of the merchandise in question. It appears from the affidavit that the foreign manufacturer of the glass under consideration had been quoting this particular item, DBC–657508, in its catalog and pricelists to customers in the foreign market for home consumption during the entire period covered by these shipments at list prices that were subject to a wide range of quantity discounts, which discounts were changed in the course of the period in controversy. It further appears from affiant's testimony that the particular type of optical glass involved herein was freely offered for sale to the foreign manufacturer's customers in the home market, that "home demands up to the year 1952 were negligible," that there was only "one order for a sample quantity of 10 lbs. in 1949," and that "During

the whole of the years 1950, 1951, and 1952 I can trace no home orders for type DBC 657508." On the matter of export value, the affiant's testimony is to the effect that up to June 30, 1951, raw optical glass, such as that involved herein, was freely offered for sale, and sold, to all purchasers for export to the United States at $3.68 per pound, and that the price did not vary according to the quantity sold. The witness' testimony further shows that, beginning on July 1, 1951, the price rate on all orders from buyers in the United States was £1.12.0 per pound, f.o.b., which is equivalent to $4.48 per pound. A list of sales, incorporated in the affidavit, shows one sale, under date of September 24, 1951, at the higher price.

Appellant offered in evidence, insofar as it relates to type DBC–657508 raw optical glass, a Treasury representative's report, which includes catalogs and pricelists, relating to the foreign market (defendant's exhibit B). This report contains nothing to show any sales of this glass in the foreign market during the period with which we are concerned in this case. The pricelists merely set forth series of prices based on different quantities. Nothing therein permits the determination of a usual wholesale quantity for such merchandise within statutory requirements.

In contending that foreign value is the proper basis for appraisement of the glass in question, appellant relies on the offers for sale of such merchandise by catalog and pricelists during the period involved herein. Counsel, in his brief, argues that "A price list is effective even if no sales were made thereunder." It is true that the statute, 28 U.S.C., section 2633, permits "price lists and catalogues" to be received in evidence in finding value for appraisement purposes, but the evidentiary value to be attached thereto is a matter for the trial court. Our appellate court, in *United States* v. *Baldwin Universal Co.*, 18 C.C.P.A. (Customs) 394, T.D. 44641, stated the proposition as follows:

* * * That is to say, if the Customs Court, after weighing the evidentiary value of a price list, comes to the conclusion that it is not entitled to any probative force, this court will not disturb such finding, but it does not mean that the lower court may, because of an erroneous conception of the law, decline to weigh a price list duly offered in evidence.

The views of the trial judge, concerning the pricelists which appellant seeks to be controlling herein, are set forth in the lower court's decision as follows:

There are several statutory elements of foreign value. Free offerings by catalog and price lists alone are not enough. Offerings must be in the usual wholesale quantity, in the principal market, and in the ordinary course of trade. Failing any of these components, foreign value in the statutory sense is not shown.

Whether or not actual sales are a *sine qua non* of foreign value, as has been argued, appears to me beside the point, on the record that is now before me. At the very least, it is necessary, when the proof is (as here) that there were no

actual sales of such merchandise, that the terms of offering should be shown to be an established price to all comers, either for a fixed quantity which is the usual wholesale quantity, or (alternatively) for any quantity of the merchandise. Here, the proof is that there was no usual wholesale quantity associated with the price offering, both because none was fixed in the price list and because, there being no actual sales, the price lists are left as the only source of proof as to usual wholesale quantity. As to price lists, the proof is that there was not an established price that was offered for any quantity, but in fact there were quoted in the price lists different prices for different quantities.

In this respect, the proofs here of record preclude the finding for which defendant argues, that there is a foreign value for *such* glass. There is no usual wholesale quantity, an essential component of foreign value. [Italics quoted.]

We are in complete accord with the reasoning followed and the conclusion reached by the trial judge, as stated in the foregoing quotation. Where, as shown by the record herein, optical glass, such as that under consideration, was offered in the foreign market for home consumption at different prices for different quantities, and there were no actual sales of such merchandise during the period involved herein, there is no "usual wholesale quantity," within the meaning thereof in the statutory definition of foreign value, under section 402(c) of the Tariff Act of 1930, as amended. *United States* v. *M. Minkus*, 21 C.C.P.A. (Customs) 382, T.D. 46912, cited.

Having determined that there is no foreign value for the glass in question, we turn now to a consideration of the alternative claim of appellant, urging that there is a statutory export value for the merchandise covered by reappraisements 264137–A to 264144–A, inclusive. Support for this claim is found in the affidavit (exhibit 3, *supra*), wherein the witness admits that the freely offered export price for glass such as that under consideration was increased as of July 1, 1951, to the equivalent of $4.48 per pound. Appellee does not deny this increase in price, but contends that it does not apply to any of these appeals for reappraisement because it affected only *orders* received after July 1, 1951, and the orders for the present merchandise, as shown by the record, were placed in September and October 1950. The *date of the order* in finding statutory export value is relatively unimportant; it is the *date of exportation* that controls. The official papers with the appeals in which appellant claims an export value disclose that all of those shipments were exported from England subsequent to July 1, 1951, when the higher export price was in effect. It, therefore, follows that the export value for such merchandise is $4.48 per pound, as claimed by appellant.

There is nothing before us to indicate in any way that, in the absence of a foreign value, the elements essential to statutory export value do not exist with respect to the merchandise in question.

Consideration has been given to all of the cases cited in the briefs of counsel for the respective parties. To outline and to review all

of them would unduly lengthen this opinion. Reference has been made to those cases deemed directly applicable to this discussion.

On the basis of the present record, and for all of the reasons hereinabove set forth, we find as facts:

1. That the merchandise involved in these appeals for reappraisement consists of raw optical glass, identified as type DBC–657508, that was manufactured according to Government specifications for exclusive use in bombsights for military aircraft, and which was exported from England during the period from December 21, 1950, and November 28, 1951.

2. That, at the time of exportation of the glass in question, such merchandise was freely offered for sale in the foreign market for home consumption to all purchasers, by catalog and at list prices that were subject to a wide range of quantity discounts, which discounts were changed in the course of the period in controversy.

3. That there were no sales in any quantity of raw optical glass, such as that in question, in the foreign market for home consumption during the period involved herein.

4. That merchandise, such as the raw optical glass in question, was, at the time of exportation of the shipments under consideration, freely offered for sale in the ordinary course of trade to all purchasers in the foreign market for export to the United States, at the price of $3.68 per pound up to June 30, 1951, and at the price of $4.48 per pound beginning on July 1, 1951, which prices did not vary according to quantities purchased.

We conclude as matter of law:

1. That, at the time of exportation of the raw optical glass in question, there was no foreign value for such merchandise, in usual wholesale quantities, as defined in section 402(c) of the Tariff Act of 1930, as amended.

2. That export value, as defined in section 402(d) of the Tariff Act of 1930, is the proper basis for appraisement of such merchandise.

3. That the statutory export value of the merchandise covered by reappraisements 264131–A, 264132–A, 264133–A, 264134–A, 264135–A, and 264136–A is $3.68 per pound, as entered.

4. That the statutory export value of the merchandise covered by reappraisements 264137–A, 264138–A, 264139–A, 264140–A, 264141–A, 264142–A, 264143–A, and 264144–A is $4.48 per pound.

The judgment of the trial court is modified.

Judgment will be rendered accordingly.

### CONCURRING OPINION

Mollison, Judge: I concur in the opinion rendered by the majority and in the findings and conclusions and judgment based thereon, but I believe that special emphasis should be laid upon the fact that,

as written, the foreign value statute does not require that actual sales of merchandise such as or similar to that under appraisement must have taken place in order to render foreign value applicable to the merchandise. See *United States* v. *American Agar & Chemical Co.*, 34 Cust. Ct. 553, A.R.D. 59, and cases cited therein on the point.

As stated herein by the majority, "the particular type of optical glass involved herein was freely offered for sale to the foreign manufacturer's customers in the home market," but because there was no demand therefor there were no sales. Consequently, although it appears that *in actual fact* merchandise such as that here involved was freely offered for sale for home consumption in the foreign market, nevertheless, in the contemplation of the law, no foreign value for such merchandise can be found.

This anomaly arises because it has been held that where merchandise is offered for sale at different prices depending upon the wholesale quantity purchased, as was the case of merchandise such as that here involved, the "usual wholesale quantities" called for by the statute is that particular quantity in which a major portion of sales or offers for sale of such or similar merchandise was made in the foreign market. *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495.

Whatever might be said of the rule in its application to cases where the outcome depends upon the existence of a history of actual sales, the rule, it seems to me, is demonstrably unworkable when the facts are that there were no prior sales but that there were *bona fide* offers of such or similar merchandise.

The offers in the foreign market for home consumption of merchandise such as that here under appraisement were made by catalog and pricelists which, presumably, were printed and disseminated in the trade, and which, in any event, did not make specific different offers of any single quantity to different purchasers but made offers of *all* quantities to *all* purchasers *at the same time*.

In such a case the "major portion of * * * offers for sale" is a matter not susceptible of proof, and foreign value under the major portion of sales or offers for sale rule cannot be found.